Laura **FERRARO**, Plaintiff–Appellant,

v.

**KELLWOOD COMPANY,**
Defendant–Appellee.

**Docket No. 04–6413.**

United States Court of Appeals,
Second Circuit.

Argued: Aug. 25, 2005.

Decided: March 7, 2006.

David H. Shapiro, Swick & Shapiro, P.C., Washington, DC, for Plaintiff–Appellant.

Steven R. Wall (Sarah E. Bouchard and Jamie M. Kohen, on the brief), Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendant–Appellee.

Before: WALKER, Chief Judge,
JACOBS and HALL, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge.

A supervisor's hot temper and foul tongue triggered this employment-discrimination lawsuit. Laura Ferraro sued her former employer, Kellwood Company, for violating the New York State Human Rights Law, N.Y. Exec. Law art. 15, and the New York City Human Rights Law, N.Y.C. Admin. Code tit. 8. Her complaint alleges that her supervisor, Arthur Gordon, demoted Ferraro, cut her salary, subjected her to a hostile work environment, and constructively discharged her on account of her breast cancer. The district court granted Kellwood's motion for summary judgment in this diversity action, a decision from which Ferraro appeals. *Ferraro v. Kellwood Co.*, 2004 WL 2646619, at *1 (S.D.N.Y. Nov.18, 2004); *see* Fed.R.Civ.P. 56. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and for the reasons stated below, we affirm.

## BACKGROUND

On April 30, 2001, Ferraro began working in the New York City office of Kellwood Company, a nationwide apparel merchant, as the president of its Vintage Blue clothing division. She reported directly to Arthur Gordon, the CEO of the Kellwood Western Region, who worked out of the company's Los Angeles office. Gordon supervised several divisions including Vintage Blue and ENC, the clothing division into which Vintage Blue was eventually folded. Gordon was a tough manager, known to rant, yell, and use profanity when upset, which was frequent. About once a month, Ferraro would attend meetings of the division presidents in Los Angeles, where she would have personal contact with Gordon. Much of their other communication was by phone.

On September 5, 2002, Ferraro was diagnosed with breast cancer. She underwent a lumpectomy on September 17, took a one-week leave of absence thereafter, and continued to work meaningfully while undergoing radiation treatment. Ferraro produced evidence that in October 2002, shortly after returning to work following her surgery, Gordon's hostility toward her drastically increased. According to Ferraro, in addition to Gordon's general ranting and cursing, he began to single out Ferraro for harsh verbal abuse both in the division presidents' meetings in Los Angeles and on the phone. In November 2002, eight weeks after Ferraro's surgery, the complaint states that Gordon sought to replace Ferraro because of her breast cancer. He interviewed, but did not hire, a candidate for president of Vintage Blue and suggested to Ferraro that she let the candidate replace her because she "may want to take it easy."

In May 2003, after several quarters of poor financial performance by Vintage Blue and eight months after the surgery, Gordon merged Vintage Blue into the ENC division. Vintage Blue's sales volume had declined in late 2002 and early 2003, and Gordon considered Ferraro's sales-volume projections for the third quarter of 2003 insufficient to justify maintaining Vintage Blue as a freestanding di-

vision. The merger of Vintage Blue into ENC was designed to create economies of scale and cut overhead. Gordon partially blamed Ferraro for Vintage Blue's poor performance and was frustrated by her repeated downward revisions to Vintage Blue's sales projections. As part of the restructuring, Gordon modified Ferraro's job so that she reported to the president of ENC rather than to Gordon. Ferraro kept her title as president and still managed Vintage Blue's sales and merchandising efforts, but she was excluded from the presidents' meetings in Los Angeles. At the same time, Gordon cut Ferraro's base salary from $270,000 to $200,000.

Ferraro worked her last day at Kellwood on Friday, May 30, 2003. The next Monday, with Ferraro present, Ferraro's therapist called Kellwood's Human Resources ("HR") department to report that Ferraro was taking disability leave because of anxiety and stress. In her deposition, Ferraro stated that the last straw precipitating her leave was "hearing that Gordon was going to make a business trip to the Vintage Blue New York Office" and feeling unable to handle Gordon's intense verbal abuse in person. On June 10, in a form submitted to Kellwood's HR department, Ferraro identified stress caused by "harassment at work" as one of her reasons for requesting a leave of absence. On July 9, the HR department sent Ferraro a letter asking her to complete an attached form to enable Kellwood to investigate the details of the harassment claim. Ferraro never completed the form, and there is no evidence in the record of an investigation. After Ferraro exhausted her disability leave on November 30, Kellwood terminated her employment.

## DISCUSSION

In this action, Ferraro claims relief under the New York State Human Rights Law, N.Y. Exec. Law art. 15, and the New York City Human Rights Law, N.Y.C. Admin. Code tit. 8, for (1) discriminatory demotion and reduction in salary and (2) hostile work environment and constructive discharge. Both the state and city laws forbid employers from discharging or changing the conditions of employment of an employee because of her disability. N.Y. Exec. L. § 296(1)(a); N.Y.C. Admin. Code § 8–107(1)(a). The standards for liability under these laws are the same as those under the equivalent federal antidiscrimination laws. *See Forrest v. Jewish Guild for the Blind,* 309 A.D.2d 546, 765 N.Y.S.2d 326, 332–33 (2003) ("[T]he standard for recovery under section 296 of the Executive Law is in accord with the federal standards under [Title VII], and the human rights provisions of New York City's Administrative Code mirror the provisions of the Executive Law." (citations omitted)); *see also Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992) ("New York courts have consistently looked to federal caselaw in expounding the Human Rights Law."). We review the district court's grant of summary judgment de novo, construing all facts in favor of Ferraro and asking whether there is a genuine issue as to any material fact and whether Kellwood is entitled to judgment as a matter of law. *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003).

## I. Discriminatory Adverse Employment Action

In discrimination claims brought under the New York State and New York City Human Rights Laws, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies. *See N. Shore Univ. Hosp. v. Rosa,* 86 N.Y.2d 413, 633

N.Y.S.2d 462, 657 N.E.2d 483, 485 (1995). That framework requires a plaintiff in a disability-discrimination case to establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action in question. Once the defendant provides such a reason, the plaintiff shoulders the burden of showing "sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext" for discrimination. *See Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir.1999).

▮ We need not decide whether the district court was correct in holding that Ferraro failed to demonstrate a prima facie case of disability discrimination because, in any event, Ferraro has failed to produce evidence to carry her burden of rebutting Kellwood's proffered nondiscriminatory reason for demoting Ferraro and reducing her salary. Kellwood produced evidence that Gordon merged Vintage Blue into Kellwood's larger ENC division because Vintage Blue's low and declining sales volume did not justify its existence as a freestanding Kellwood division. Kellwood also produced evidence that the restructuring was motivated by the goal of achieving economies of scale through the combining of certain duplicative functions and that the changes in Ferraro's job description and salary resulted from this restructuring. Kellwood further introduced evidence that Gordon held Ferraro, as the manager in charge of Vintage Blue's sales, merchandising, and sales projections, partially responsible for the poor sales volume.

Ferraro produced no evidence showing that the reasons offered by Kellwood are a pretext for discrimination. Ferraro points out that other divisions with poor financial performance were not reorganized. Ferra-ro, however, has produced no evidence that the other divisions had sales volumes insufficient to support their overhead, that Vintage Blue did not in fact have poor sales volume, or that efficiencies did not result from folding Vintage Blue into ENC.

To survive a motion for summary judgment, Ferraro need not show evidence definitively proving that Kellwood reduced her rank and salary because of her illness. She must, however, offer some evidence, such as the falsity of Kellwood's stated legitimate reason, from which one may infer the ultimate fact of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that "[a] prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability" in an employment-discrimination action); *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc) (requiring an employment-discrimination plaintiff to show that the employer's articulated reason is a pretext and noting that "the pretext finding itself [may] point[ ] to discrimination"). This she has not done. We therefore affirm the district court's grant of summary judgment in Kellwood's favor on Ferraro's claim of discriminatory adverse employment action.

## II. Hostile Work Environment and Constructive Discharge

▮ Ferraro also claims relief for a hostile work environment and constructive discharge. A claim for hostile work environment requires the plaintiff to show discriminatory conduct that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted); *see also Leopold v. Bac-*

carat, Inc. ("*Leopold I*"), 174 F.3d 261, 267 (2d Cir.1999). A plaintiff's further claim for constructive discharge requires the plaintiff to prove that her employer deliberately and discriminatorily created work conditions "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Upon that showing, the employee's decision to resign "is assimilated to a formal discharge for remedial purposes." *Id.*

■■ Against employee claims of hostile work environment and constructive discharge, the employer may have recourse to the so-called *Faragher/Ellerth* affirmative defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The defense comprises two elements: that (1) "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. The employer may raise the defense, however, only if one of two further elements is met: either (1) the employee's supervisor took no "tangible employment action," which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment. *See Faragher*, 524 U.S. at 808, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257 (same). Otherwise, the employer is strictly liable for the supervisor's misconduct.

The Supreme Court created the *Faragher/Ellerth* affirmative defense because it saw a difference between (1) situations in which the supervisor's harassing acts plainly invoked his official power and were therefore undoubtedly aided by the supervisor's agency relationship with the employer and (2) situations in which the use of official power in the supervisor's harassment was less clear and therefore the "aided-by-the-agency" relationship was "insufficiently developed." *Suders*, 542 U.S. at 145, 124 S.Ct. 2342 (describing the genesis of the defense). In the former situation, the official power granted by the employer to the supervisor was used to harass the employee, so the employer is held strictly liable for the supervisor's misconduct and the affirmative defense may not be raised. *Id.* In the latter situation, it is less certain that the supervisor misused official power to further his discriminatory harassment and that the company could know of the supervisor's misconduct. *Id.* at 144–45, 124 S.Ct. 2342. Accordingly, the Court decided that strict employer liability was inappropriate in such a situation. "Looking elsewhere for guidance," the Court fashioned an affirmative defense that provides incentives to both employees and employers in furtherance of the conciliatory and deterrent purposes of federal anti-discrimination law. *Id.* at 145, 124 S.Ct. 2342. The two elements of this affirmative defense encourage employees to report harassment and employers to institute and maintain "effective preventive and corrective measures." *Id.*

The district court erroneously stated the test for the unavailability of the *Faragher/Ellerth* affirmative defense. It wrote that to preclude the defense, there is no "requirement that the [supervisor's] tangible employment action be motivated by discriminatory animus." To the contrary, the Supreme Court has held that employers are barred from raising the affirmative

defense only when "the supervisor's harassment culminates in a tangible employment action." *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257 (same). The harassment spoken of is harassment with impermissible discriminatory animus, for example, the sexual harassment in *Faragher*, 524 U.S. at 780–82, 118 S.Ct. 2275, and *Ellerth*, 524 U.S. at 747–49, 118 S.Ct. 2257. The word "culminate" requires that the tangible employment action be linked to the supervisor's discriminatory harassment.

This reading comports with the purpose of the test—to determine whether "the supervisor's misconduct has been aided by the agency relation." *Suders*, 542 U.S. at 148, 124 S.Ct. 2342. If an official action taken by a supervisor is not part of his discriminatory harassment, it provides no evidence that the supervisor used his agency relation with the employer to further his misconduct. Other circuits addressing the issue have unanimously reached the same conclusion: a supervisor's tangible employment action must be related to the alleged discriminatory harassment to preclude recourse to the *Faragher/Ellerth* affirmative defense. *E.g., Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 962 (9th Cir.2003); *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1312, 1317 (11th Cir.2001); *Johnson v. West*, 218 F.3d 725, 731 (7th Cir.2000); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 182 (4th Cir. 1998); *Newton v. Cadwell Labs.*, 156 F.3d 880, 883–84 (8th Cir.1998).

Because the district court erroneously held that the tangible employment action need not be part of the supervisor's discriminatory harassment to foreclose an employer's recourse to the *Faragher/Ellerth* affirmative defense, it wrongly precluded Kellwood from raising the defense. To be sure, Gordon's demotion of Ferraro

and reduction of her salary were tangible employment actions, but Kellwood has established that these actions were independent of Gordon's discriminatory harassment of Ferraro. *See* Part I, *supra*. We therefore find that Kellwood may make recourse to the *Faragher/Ellerth* affirmative defense. We note that on appeal, Ferraro does not dispute the availability of the defense.

 Having determined its availability, we now turn to the applicability of the *Faragher/Ellerth* affirmative defense. As noted earlier, the defense has two elements: (1) "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive. *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir.2003); *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 295 (2d Cir.1999). And under the second element, proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden. *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

During Ferraro's term of employment, Kellwood had an antiharassment policy in effect that prohibited harassment on account of disability or medical condition, promised that complaints would be handled promptly and confidentially, and contained an anti-retaliation provision. It

provided a procedure for employees to complain about prohibited conduct to a supervisor, an HR representative, the Kellwood Corporate Vice President of Human Resources, or the Kellwood telephone hotline. Ferraro does not dispute the reasonableness of Kellwood's antiharassment policy or its complaint procedures. We therefore find that Kellwood has satisfied the first element of the *Faragher/Ellerth* affirmative defense.

■ Ferraro does contend, however, that Kellwood failed to carry its burden on the second element of the affirmative defense—whether Ferraro unreasonably failed to use the complaint procedure provided by Kellwood. The defendant bears the ultimate burden of persuasion on this element, but it may carry that burden by first introducing evidence that the plaintiff failed to avail herself of the defendant's complaint procedure and then relying on the absence or inadequacy of the plaintiff's justification for that failure. *Leopold v. Baccarat, Inc.* (*"Leopold II"*), 239 F.3d 243, 246 (2d Cir.2001).

Ferraro contends that her forbearance was reasonable because Kellwood "ignored or resisted" a previous similar complaint by another employee about Gordon. That complaint was made by Gordon's assistant, Mary Pinterelli, who complained to Kellwood HR representative Sue Hammond that Gordon had angrily told her to "get out of my f'ing office" and that she was behaving like an unwanted "mother." Hammond listened to Pinterelli's description of the incident and decided that Pinterelli had intruded into Gordon's personal affairs. Hammond told Pinterelli to change this aspect of her interaction with Gordon, allowed Pinterelli to go home for the day, and told Gordon that Pinterelli was upset about Gordon's outburst. This complaint comports with the view of Gordon, undisputed by Kellwood, as a short-tempered and foul-mouthed supervisor, but there is no evidence in the record that Pinterelli indicated to the HR department that Gordon's outburst was motivated by any prohibited discriminatory animus. Further, there is no record evidence of any other complaints against Gordon under the complaint procedure. Finally, though Ferraro asserts that Pinterelli was "punished" by the HR department, Ferraro provides no argument that HR's response to the complaint was inappropriate. In sum, the Pinterelli complaint is not adequate evidence to show that Kellwood "ignored or resisted" complaints against Gordon similar to the one now pressed by Ferraro, nor does it provide a basis to justify Ferraro's failure to avail herself of Kellwood's complaint procedure.

We therefore find that there is no evidence from which a reasonable jury could conclude that Kellwood failed to carry its burden of persuasion on the second element of the *Faragher/Ellerth* affirmative defense. Because no genuine issue of fact precludes Kellwood from successfully asserting the affirmative defense, Kellwood is entitled as a matter of law to judgment on Ferraro's claims of hostile work environment and constructive discharge.

## CONCLUSION

The district court's grant of summary judgment to defendant Kellwood Company is affirmed.