SUMMARY ORDER
At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 7th day of April, two thousand six.
AFTER ARGUMENT AND UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED.
We assume the familiarity of the parties and counsel with the facts and procedural history of this appeal, which we recite only as we think necessary to explain our conclusions.
In August 2004, plaintiff 'Whitney Finnerty filed a complaint in the United States District Court for the Southern District of New York against her employer, William H. Sadlier, Inc. (“Sadlier”) alleging, inter alia, hostile work environment sex discrimination and retaliation, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] At *160 the close of discovery, Sadlier moved for summary judgment, asserting the affirmative defense enunciated in the simultaneously decided cases of Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (“Faragher/Ellerth affirmative defense”). The district court (Charles L. Brieant, Judge) granted Sadlier’s motion. See Finnerty v. William H. Sadlier, Inc., No. 04 Civ. 7007 (S.D.N.Y. July 25, 2005). Finnerty now appeals from the ensuing judgment dismissing her Title VII claims. On appeal, the sole issue that Finnerty raises is whether the district court correctly concluded that Sadlier was entitled to the Faragher/Ellerth affirmative defense. We agree that it is and therefore affirm.
We review de novo a district court’s grant of summary judgment and construe the evidence in the light most favorable to the non-moving party. Mack v. Otis Elevator Co., 326 F.3d 116, 119 (2d Cir.2003). We may affirm the district court’s grant of summary judgment for Sadlier only if, in light of the record as a whole, no rational juror could find for Finnerty. Id. at 120 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); see also Fed.R.Civ.P. 56(c) (summary judgment is proper when “there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law”).
“To survive a motion for summary judgment, a plaintiff claiming he or she was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude ... ‘that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment. ...’” Mack, 326 F.3d at 122 (quoting Richardson v. N.Y. State Dep’t of Corr. Serv., 180 F.3d 426, 436 (2d Cir.1999)) (alterations incorporated). “In addition, the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer.” Fairbrother v. Morrison, 412 F.3d 39, 48-49 (2d Cir. 2005). “Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer’s vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.” Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d Cir.2004). The analysis “differs where the harassment is attributed not to non-supervisory co-workers but to a supervisor with immediate or successively higher authority over the employee,” Fairbrother, 412 F.3d at 49, such as the defendant Richards. “In that circumstance, a court looks first to whether the supervisor’s behavior culminated in a tangible employment action against the employee.” Id. (internal quotation marks and citations omitted; alteration incorporated). “If it did, ‘the employer will, ipso facto, be vicariously liable.’ ” Id. (quoting Mack, 326 F.3d at 124).
If no such tangible employment action is present, an employer will still be hable for a hostile work environment created *161 by a supervisor unless the employer successfully establishes an affirmative defense. Petrosino, 385 F.3d at 225. That defense requires the employer to show that (a) it “exercised reasonable care to prevent and correct promptly any sexually harassing behavior,” and (b) “the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.”
Id. (quoting Ellerth, 524 U.S. at 765, 118 S.Ct. 2257).
Finnerty first asserts that Sadlier is not entitled to the Faragher/Ellerth affirmative defense because she suffered a tangible employment action when she was reassigned to a new position in its general counsel’s office after complaining of sexual harassment by her supervisor, Richards. Finnerty also argues that the alleged termination of her employment constituted a tangible employment action. Both of these contentions are without merit.
As the Supreme Court has explained, because “when a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation,” between the supervisor and the employer, Ellerth, 524 U.S. at 761-62, 118 S.Ct. 2257, “a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer,” id. at 762, 118 S.Ct. 2257; see also Pa. State Police v. Suders, 542 U.S. 129, 144-45, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (“[W]hen a supervisor takes a tangible employment action against a subordinate, it would be implausible to interpret agency principles to allow an employer to escape liability.” (internal quotation marks omitted; alterations incorporated)). Here, however, there is no evidence in the record suggesting that Richards had a hand in Finnerty’s reassignment or purported termination, and Finnerty does not allege otherwise. In any event, the record establishes that “any tangible employment action taken against [Finnerty] was not part of [Richards’] discriminatory harassment.” Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir.2006). Finnerty was reassigned to remove her from Richards’ supervision. Her employment with Sadlier ceased only after she subsequently refused to return to work. Cf. id. at 102 (noting that any tangible employment actions taken against the plaintiff “were independent of [the] discriminatory harassment”).
In her reply brief, for the first time, Finnerty argues that the hostile work environment created by Richards itself constituted a tangible employment action. Ordinarily, “[w]e will not consider an argument raised for the first time in a reply brief.” United States v. Yousef, 327 F.3d 56, 115 (2d Cir.), cert. denied, 540 U.S. 933, 124 S.Ct. 353, 157 L.Ed.2d 241, cert. denied, 540 U.S. 993, 124 S.Ct. 492, 157 L.Ed.2d 392 (2003). In any event, Finnerty’s argument is without merit. If a hostile work environment alone could constitute a “tangible employment action,” no employer would be able to invoke the Faragher/Ellerth affirmative defense in a situation where a hostile work environment existed. But the affirmative defense is designed for precisely such a situation. Indeed, we have decided that even a constructive discharge resulting from a hostile work environment does not constitute a tangible employment action because generally a constructive discharge, like harassment itself, is not “ratified or approved by the employer.” Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 294 (2d Cir.1999), cert. denied, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000); accord Suders, 542 U.S. at 148-49, 124 S.Ct. 2342.
Jin v. Metropolitan Life Ins. Co., 310 F.3d 84 (2d Cir.2002), cited by Finnerty, is *162 consistent with that decision. There, we concluded that the district court erred by giving the jury a definition of tangible employment action that excluded from consideration the fact that in order to retain her job Jin was required to submit, and in fact did submit, to weekly sexual assaults by her superior. Id. at 97-99. A rational juror could conclude, we reasoned, that Jin received an official employment benefit— the retention of her job—in return for submitting to her supervisor’s physical abuse, a scenario we characterized as “a classic quid pro quo.” Id. at 94. Here, by comparison, Finnerty does not contend that Richards explicitly threatened her with termination or otherwise formally altered or threatened to alter her job responsibilities if she did not submit to his advances. There is no evidence from which a rational juror could conclude that Finnerty suffered a tangible employment action as a result of Richards’ alleged harassment.
As noted above, to establish its affirmative defense, Sadlier must show “ ‘(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that [Finnerty] unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.’ ” Fairbrother, 412 F.3d at 53 (quoting Faragher, 524 U.S. at 807, 118 S.Ct. 2275). Finnerty argues that Sadlier failed to make a sufficient showing that it exercised reasonable care. Although “[a] party faces a significantly heightened standard to obtain judgment as a matter of law on an issue as to which that party bears the burden of proof,” id., we conclude that Sadlier has met its burden.
We have said that, although it is not dispositive, “[o]ne way for employers to demonstrate that they exercised reasonable care is to show that they had an anti-harassment policy in place.” Mack, 326 F.3d at 128. It is undisputed that Sadlier maintained such a policy and that Richards was aware of it. Although Finnerty contends that she is unsure whether she received the employee manual containing the policy, it appears clear that she too was aware of it. As Finnerty set forth in her complaint to the EEOC, she spoke with Fran Marsh, the head of Sadlier’s Human Resources Department, because Marsh “was one of the people designated in the Company’s Employee Manual to whom such conduct was to be reported.” In addition, the record demonstrates that within one week after Marsh received Finnerty’s complaint, Sadlier initiated an investigation, determined that Richards’ conduct violated company policy, formally reprimanded him and warned him that another incident could lead to his dismissal, and arranged for Finnerty to be transferred to a new department with the same compensation and benefit package. We conclude that no rational juror could find that Sadlier failed to exercise reasonable care in preventing and correcting promptly harassing behavior.
Finnerty also urges that there exist genuine issues of material fact with regard to whether she unreasonably failed to take advantage of any preventative or corrective opportunities provided by Sadlier or to avoid harm otherwise. However, it is undisputed that although the acts alleged to constitute harassment begin in 2000, Finnerty did not inform Sadlier of what had been occurring until more than three years later, in January 2004, and only then because a co-worker first informed Marsh of Finnerty’s allegations.
Finnerty contends that she declined to report Richards’ conduct for as long as she did because Marsh told her that a complaint could not be kept confidential, she feared reprisal from Richards, and she held Richards in high esteem. None of *163 those explanations renders her three-year delay reasonable. We have never required a company to maintain a policy that guarantees confidentiality in order to invoke the affirmative defense. See Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001). Indeed, it is hard to imagine how a company could keep a complaint confidential and also conduct a fair and thorough investigation. Nor does Finnerty’s alleged fear of reprisals from Richards justify her refusal to report his behavior. For such reluctance to preclude the employer’s affirmative defense, “it must be based on apprehension of what the employer [i.e., Sadlier] might do.” Caridad, 191 F.3d at 295 (emphasis added).
Moreover, a plaintiff must produce evidence showing that his or her fear is “credible,” such as proof “that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints.” Leopold, 239 F.3d at 246. Finnerty has produced no such evidence. Nor does Finnerty’s respect for Richards justify her three-year delay in reporting his conduct. We conclude that no rational juror could find that Finnerty acted reasonably, in the context of Sadlier’s assertion of the Faragher/Ellerth affirmative defense, in declining to report Richards’ behavior for over three years. She may have had reasons that were, for her personally, sufficient to support a decision not to report Richards’ behavior earlier, but that cannot be part of our analysis.
Finally, to be sure, Sadlier’s alleged tangible employment decisions—the reassignment and ultimate termination of Finnerty—would be relevant to Finnerty’s retaliation claims brought directly against Sadlier. It would appear, though, that despite counsel’s assertion to the contrary at oral argument, Finnerty has abandoned her retaliation claims on appeal by not raising any argument before us that is explicitly directed to these claims in her briefs on appeal. See Omnipoint Commc’ns, Inc. v. City of White Plains, 430 F.3d 529, 532 n. 1 (2d Cir.2005). We note, nonetheless, that in granting summary judgment to the defendants, the district court engaged in no separate analysis of Finnerty’s retaliation claims, stating only that “[b]ecause Faragher-Ellerth is a complete defense, Sadlier’s motion to dismiss the sexual harassment claims is granted.” Finnerty, slip op. at 9. We think that the court was mistaken. The Faragher/Ellerth affirmative defense is about the extent to which an employee’s misbehavior may be attributed to his or her employer under principles of vicarious liability. It has no role in analyzing Sadlier’s direct liability to Finnerty for its own actions with respect to the change of her employment position subsequent to her complaints of harassment, and her alleged subsequent termination. In analyzing the retaliation claims, the court should have employed the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See, e.g., Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 116 (2d Cir.2000). After engaging in the McDonnell Douglas Corp. burden-shifting exercise, the district court might well have been compelled to grant summary judgment to Sadlier on the ground that Finnerty elicited no evidence that Sadlier “was motivated by prohibited retaliation,” Gordon, 232 F.3d at 116 (internal quotation marks omitted; alteration incorporated), in reassigning and then allegedly dismissing her. But Finnerty has not placed that issue before us.
For the reasons set forth above, the judgment of the district court is therefore hereby AFFIRMED.

. In addition to alleging violations of Title VII, Finnerty also brought claims against Sadlier pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., New York State Human Rights Law, and for intentional infliction of emotional distress and negligent infliction of emotional distress. Finnerty also asserted claims against her supervisor, Robert Richards, pursuant to New *160 York State Human Rights Law and for intentional infliction of emotional distress, negligent infliction of emotional distress, assault and battery. For various reasons set forth in its Memorandum Opinion, the district court granted summary judgment to the defendants on all claims except for Finnerty’s claims of assault and battery against Richards, over which the court declined to exercise supplemental jurisdiction. See Finnerty v. William H. Sadlier, Inc., No. 04 Civ. 7007 (S.D.N.Y. July 25, 2005). Finnerty does not appeal the district court’s judgment with respect to any of these claims.