Dolores WILLIAMS, Plaintiff–Appellant,

v.

CONSOLIDATED EDISON CORPORATION OF NEW YORK, Defendant–Appellee.

No. 07–0687–cv.

United States Court of Appeals, Second Circuit.

Nov. 27, 2007.

Stephen T. Mitchell, New York, NY, for Plaintiff–Appellant.

Richard A. Levin (Mary Schuette, Jonathan A. Fields, on the brief), New York, NY, for Defendant–Appellee.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. B.D. PARKER and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Plaintiff–Appellant Dolores Williams ("Williams") appeals from an order of the United States District Court for the Southern District of New York (Hellerstein, J.), dated January 18, 2007, granting summary judgment to Defendant–Appellee Consolidated Edison Corporation of New York ("Con Ed") on Williams's federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, and declining

to exercise supplemental jurisdiction over Williams's state and municipal law claims. We assume the parties familiarity with the facts and the procedural history of this case.

■ We affirm the grant of summary judgment to Con Ed on Williams's discrimination and retaliation claims. Williams is time-barred from bringing almost all of these claims under Title VII because she failed to file a charge with the EEOC within 180 days of the occurrence of these allegedly unlawful practices. *See* 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]' [such that a plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."). While two alleged adverse actions in Williams's racial discrimination claim may be construed as falling under Section 1981's four year statute of limitations—her contention that she suffered discrimination when assigned to partner with the only other African–American woman at the facility and when she lost training opportunities as a result—neither claim survives summary judgment. The record establishes that work partnerships were decided through a seniority-based system and Williams concedes that Howe selected her as a partner. She also admits that any purported denial of training resulted from her partnership with Howe, rather than with a more experienced male partner. Since Williams failed to raise a material question of fact as to whether Con Ed's legitimate, non-discriminatory reason for pairing her with Howe was a pretext for discrimination, the district court was correct to grant summary judgment for Con Ed on Williams's discrimination claims.

■ Similarly, with respect to the sole retaliation claim that falls within the 180–day time limit, arising out of Williams's five-day suspension and 12–month "final warning" probation, Williams has failed to meet her burden of rebutting Con Ed's legitimate, non-retaliatory reason for disciplining her. *See Ferraro v. Kellwood Co.,* 440 F.3d 96, 100 (2d Cir.2006) (affirming summary judgment where employee has failed to rebut legitimate, non-retaliatory reason by employer for its action). Williams admitted that she made statements referring to the possibility of driving a truck into the trailers of the Brooklyn flush facility and to going "postal" at work—comments that invoke images of violence against her superiors and that could be understood as veiled threats. Furthermore, three coworkers reported that those comments were even more explicitly threatening than Williams admitted. Based on its zero tolerance policy of violence or threats of violence in the workplace, Con Ed took disciplinary action. Williams has failed to offer any direct or circumstantial evidence that Con Ed's proffered reason for disciplining her was pretextual. *See Terry v. Ashcroft,* 336 F.3d 128, 140 (2d Cir.2003) (reversing summary judgment because a reasonable factfinder could conclude that the employer's nondiscriminatory reason was pretextual); *Raniola v. Bratton,* 243 F.3d 610, 626 (2d Cir.2001) (same). Summary judgment in favor of Con Ed on this claim was therefore appropriate.

■ The district court erred, however, in holding that no reasonable fact-finder could conclude that Williams demonstrated a hostile work environment and that no reasonable fact-finder could dispute that Con Ed's response to evidence of a sexual-

ly and racially hostile work environment was reasonable and prompt.

Williams provided evidence of the following treatment or conduct over the course of approximately three years at the company:[1] (1) one supervisor, John Dekanchuk, referred to Williams as a "black bitch" on more than one occasion and Fernandez, another supervisor, referred to her as a "bitch"; (2) Dekanchuk directed gender-based verbal abuse at Williams and Howe; (3) Dekanchuk insinuated that Williams and Oliver Jones were having a sexual relationship; (4) several male co-workers repeatedly used offensive and derogatory terms for women, such as "bitch" and "cunt"; (5) women encountered pornographic materials in the workplace on at least several occasions; (6) Williams and Jackie Howe experienced tampering and sabotage of their equipment; (7) male co-workers were unwelcoming to women and commented that they did not belong in the Brooklyn Flush unit; (8) male workers sought to avoid shifts with women and supervisors would honor their requests; (9) at least one employee made comments to the effect that supervisors should let the men know when women were menstruating; and (10) women were not provided with adequate locker room facilities for months, until October 2001, although the men were. In addition, one of Ms. Williams's coworkers, Susan Kartell, states that she, too, was sexually harassed, including that she was called a "bitch" and a "cunt" on a regular basis, that supervisors ignored her complaints about this verbal abuse, and that one supervisor threatened to suspend her from her job if she continued to complain.

The record also contains evidence of racial animus, including discriminatory work assignments, racially patterned work location assignments, and racially disparate treatment with respect to docking pay for lateness. One deponent testified that Dekanchuk and Steve Raft, a coworker, used the word "nigger" and that other employees used racially offensive language such as "boy" to talk down to black employees. Because a hostile work environment claim "focuses on the nature of the workplace environment as a whole," evidence of racial and sexual harassment and hostility beyond what is directed specifically at the plaintiff is relevant to our analysis. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000).

Looking at the totality of circumstances and the "cumulative effect" of these acts, *see AMTRAK*, 536 U.S. at 115, 122 S.Ct. 2061, Williams has provided sufficient evidence of gender-based and race-based harassment to create a dispute as to material facts that would support her hostile work environment claim.[2] Although none of the alleged harassment was physically threatening, these incidents were frequent or continuous, interfered with Williams's ability to do her work, and, as to some, were severe. *See, e.g., Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir.1993) ("Perhaps no single act can more quickly alter the conditions of

1. Williams is not time-barred from including all of these incidents as part of her hostile work environment claim, because at least one incident—Dekanchuk's gender-based verbal abuse of Williams and Jackie Howe—occurred within the 180–day time period preceding the filing of her EEOC charge. *See AMTRAK*, 536 U.S. at 117, 122 S.Ct. 2061 ("Provided that an act contributing to the claim occurs within the filing period, the en-

tire time period of the hostile environment claim may be considered by a court for the purposes of determining liability.").

2. We apply the same standard to both race-based and sex-based hostile work environment claims. *See Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 436 n. 2 (2d Cir.1999).

employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.") (internal quotation marks and citation omitted) (quoted by *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 439 (2d Cir.1999)); *see also Cruz*, 202 F.3d at 572 (holding that a jury could find that evidence of racial harassment exacerbated sexual harassment, and vice versa).

Williams has also presented evidence that creates a genuine factual dispute about whether Con Ed may be held liable for the hostile work environment. Because most of the allegations that comprise Williams's hostile work environment claim involve co-worker conduct, we examine whether Con Ed knew or should have known about the discriminatory behavior and, if so, whether it took appropriate remedial action. *See Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir.2000); *see also* 29 C.F.R. § 1604.11(d) (2007) (stating that an employer is liable for co-worker harassment when it "knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action").[3] It is undisputed that Con Ed knew about the majority of incidents that comprise Williams's hostile work environment claim, with the possible exception of the allegations of sabotage to her work vehicle,[4] because Williams reported them to her supervisors and raised them with human resources personnel.

Whether Con Ed's response to Williams's complaints about a sexually and racially hostile work environment—and the information it obtained in the process of investigating her complaints—constituted "appropriate remedial action" is subject to reasonable dispute on the record before us. During the first human resources investigation into Williams's complaints in 2002, several of Williams's co-workers verified her allegations that men sought to avoid working with women and supervisors honored their requests and that African–American employees were sent more frequently to high-crime neighborhoods. Yet inexplicably, the report summarizing the investigation did not discuss these co-worker accounts in reaching its conclusion that there was no record of discriminatory work assignments. Given the information that Con Ed received during its investigation and the absence of anything in the record indicating whether Con Ed followed

---

**3.** When an actionable hostile work environment is created by an employee's supervisor, the employer is subject to vicarious liability and the employee need not establish knowledge of the harassment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *accord Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). When the harassment does not result in a tangible employment action, the employer may still present an affirmative defense to responsibility that "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *see also Ferraro*, 440 F.3d at 101–03 (applying the *Faragher/Ellerth* affirmative defense).

**4.** Howe submitted an affidavit stating that she complained repeatedly to supervisors about the sabotage of their truck. There is no other evidence in the record that either Williams or Howe submitted a formal complaint about this behavior. Because we hold that a reasonable juror could find that Con Ed failed to take prompt and appropriate remedial action with respect to other complaints by Williams, we need not decide whether Howe's affidavit would be sufficient to establish that Con Ed knew of this alleged harassment.

up on this information, a reasonable juror could find that Con Ed failed to take prompt and appropriate remedial action in response to substantiated allegations of sexual and racial hostility in the workplace.

When Williams complained a second time to human resources about being subject to a sexually hostile work environment, the human resources officer closed his investigation after speaking only to Williams's supervisor. That action was based in part on Williams's decision not to follow up with him because she was "too stressed." A reasonable fact-finder could conclude this second investigation was a perfunctory and inappropriate response to Williams's hostile work environment allegations, which Con Ed arguably should have investigated regardless of whether Williams had the time or the energy to pursue it further. *Cf. Petrosino v. Bell Atlantic*, 385 F.3d 210, 225-26 (2d Cir. 2004) (denying summary judgment when, *inter alia*, plaintiff alleged that after she requested but was refused an opportunity to speak with a female counselor, no one investigated her complaint or took remedial action). Based on these two investigations,[5] although "[a] fact-finder may well conclude that [the employer]'s responses *were* reasonable and adequate," we cannot "say as a matter of law that the record evidence compels only that result." *Richardson*, 180 F.3d at 442.

For the foregoing reasons, we AFFIRM in part and VACATE in part the judgment below and REMAND to the district court for further proceedings consistent with this order.

---

5.  Because we find the appropriateness of Con Ed's response in these two instances to be subject to dispute, we need not address whether the district court correctly concluded that Con Ed's response to Williams's complaints about pornography in the workplace or her supervisor Dekanchuk constitute prompt and appropriate remedial action.