*Miller v. New York State Police*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of April, two thousand twenty-two.

PRESENT:

> JOHN M. WALKER, JR.,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges*.

_____

LETHONIA MILLER,

> *Plaintiff-Appellant*,

v.                                                                No. 20-3976

NEW YORK STATE POLICE, KEVIN KENDALL, FRANCIS P. CHRISTENSEN,

> *Defendants-Appellees*.

_____

| | |
|---|---|
| For Plaintiff-Appellant: | LINDY S. KORN, Law Office of Lindy Korn PLLC, Buffalo, New York. |
| For Defendants-Appellees New York State Police and Francis P. Christensen: | BRIAN D. GINSBERG, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, and Jonathan D. Hitsous, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, New York. |
| For Defendant-Appellee Kevin Kendall: | RODNEY O. PERSONIUS, Personius Melber LLP, Buffalo, New York. |

Appeal from a judgment of the United States District Court for the Western District of New York (Richard J. Acara, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Lethonia Miller, an African American male and a former investigator for the New York State Police, appeals from a judgment of the district court (Acara, *J.*) adopting the Report and Recommendation of the magistrate judge (Foschio, *M.J.*) and granting summary judgment in favor of Defendants-Appellees. Miller brought claims for race-based disparate treatment, retaliation, and hostile work environment against his former supervisor, Defendant-Appellee Kevin Kendall, under 42 U.S.C. §§ 1981 & 1983, and against Defendant-Appellee New York State Police under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Miller also brought disability-based claims against the New York State Police and its Deputy Superintendent, Defendant-Appellee Francis P. Christensen, for discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and for discrimination and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* As relevant to this appeal, Miller alleged in sum that Kendall, who is Caucasian, created a hostile work environment by using racially derogatory language, and that the New York State Police and Christensen discriminated against Miller on the basis of his disability and retaliated against Miller by suspending him without pay and denying his request for outside employment.

This Court applies *de novo* review to a district court's grant of summary judgment. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). A grant of summary judgment will be upheld "if the evidence, viewed in the light most favorable to the party against whom [summary judgment was] entered, demonstrates that there are no genuine issues of material fact and that the judgment [was] warranted as a matter of law." *Glob. Network Commc'ns, Inc. v. City of New York*, 562 F.3d 145, 150 (2d Cir. 2009); *see* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if, after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

I.      Existence of a Hostile Work Environment

Miller alleged hostile work environment claims against the New York State Police under Title VII and against Kendall under 42 U.S.C. § 1981.[1]

To establish a hostile work environment under Title VII or § 1981, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

---

[1] As an initial matter, individual supervisors are not subject to liability under Title VII. *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). Miller has therefore waived his hostile work environment claim as to Kendall by framing that claim solely in terms of Title VII. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (noting that "arguments not made in an appellant's opening brief are waived"). Similarly, Miller does not discuss in his brief and has therefore waived his claims for disparate treatment and retaliation as to all Defendants-Appellees. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012) (holding that related but undiscussed claims are waived).

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances . . . ." *Id.* at 321. A court ruling on a motion for summary judgment "may not properly focus on individual strands of evidence and consider the record in piecemeal fashion; rather, it must consider all of the evidence in the record, reviewing the record taken as a whole." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) (alterations incorporated and internal citations and quotation marks omitted). "[W]hen the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020).

Moreover, "conduct not directly targeted at or spoken to an individual but purposefully taking place in his presence can nevertheless transform his work environment into a hostile or abusive one." *Id.* at 389. "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997) (internal citations and quotation marks omitted).

In support of his claims, Miller pointed to at least twelve incidents over a period of three years wherein Kendall, in Miller's presence, allegedly repeated the statements of colleagues or

4

witnesses containing racial slurs, called particular African Americans "animals" or "savages," used a mocking or minstrelsy voice, showed Miller an online video making fun of an African American woman, used the word "nigga" in a Facebook post under a fictitious name as part of an undercover investigation, and remarked that a suspect's African American sister "had a great body for monkey sex." J. App'x at 65–66, 474, 890, 1017.

Miller argues that the district court improperly failed to view the twelve alleged workplace incidents in their totality, instead analyzing the incidents individually or dividing them into several categories. However, the district court was aware of the "totality of the circumstances" requirement, which was cited in the Magistrate Judge's Report. While the Report organizes its detailed discussion of the twelve alleged incidents into several categories, this alone does not indicate the district court failed to consider them in their totality. It does not appear to be the same kind of piecemeal analysis at issue in cases cited by Miller, where district courts ignored or failed to adequately consider incidents that were not facially discriminatory, *see Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010), or rejected a claim because the alleged incidents were episodic rather than continuous, *see Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 180 (2d Cir. 2012).

Miller further argues that he met his *prima facie* burden as to the existence of a hostile work environment by establishing that racial epithets were used in the workplace generally, irrespective of whether such epithets were directed specifically at him. To be sure, this Court recognizes the special power that a supervisor's use of a racial epithet has in creating a hostile work environment. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2012). And while a plaintiff must usually show "more than a few isolated incidents of racial

5

enmity," we have recognized the caveat that "a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (internal citations and quotation marks omitted). Beyond this caveat, however, the standard articulated in *Schwapp v. Town of Avon* still applies and, viewing the facts in the light most favorable to him, Miller does not make out a case for hostile work environment under that standard. *See Albert-Roberts v. GGG Constr., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013) (rejecting plaintiff's argument "that the single use of the word 'nigger' is so severe as to make out a *prima facie* case and survive summary judgment").

Accordingly, the district court properly granted summary judgment in favor of Defendants-Appellees on Miller's hostile work environment claims.[2]

II. *Faragher/Ellerth* Defense

Even if it could be argued that Miller *had* made out a *prima facie* case for hostile work environment, the district court's grant of summary judgment in favor of Defendants-Appellees was still justified under the so-called *Faragher/Ellerth* defense. That affirmative defense to employer liability for a hostile work environment claim "consists of two elements: that (1) 'the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or

---

[2] Miller also challenges the district court's dismissal of his constructive discharge claim, which it premised on the same analysis as its dismissal of Miller's hostile work environment claims. The former argument fails for the same reasons as the latter.

6

corrective opportunities provided by the employer or to avoid harm otherwise.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (first quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); and then quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)) (alteration incorporated). Miller argues that the district court erred when it held in the alternative that, even if Miller had pointed to evidence capable of establishing the existence of a hostile work environment, the New York State Police would be shielded from liability based on the *Faragher*/*Ellerth* defense. In particular, Miller argues the New York State Police did not take any action to promptly correct the discriminatory harassing behavior because the internal investigation that followed Miller's filing of a formal internal complaint resulted in Kendall being censured only for using a photo without permission in a pseudonymous Facebook post.

Miller's argument misapprehends the first element of the defense, which looks to the adequacy and efficacy of the employer's procedures in addressing harassment, not simply to the specific discipline imposed as an end result of those procedures. "An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006). Miller has not disputed that the New York State Police maintained a policy for dealing with the discriminatory behavior in question. Nor does he "dispute the reasonableness of [the New York State Police]'s antiharassment policy or its complaint procedures." *Id.* at 103. Under those procedures, the New York State Police conducted a thorough investigation in response to Miller's formal internal complaint—reviewing records and inquiring into each of the alleged incidents through a score of witness interviews—and produced a detailed written report on the findings. The internal

7

procedures indeed seem to have promptly corrected the harassing behavior, as Miller has not alleged any racially derogatory conduct by Kendall postdating Miller's filing of an internal complaint. As to the second element of the defense, the New York State Police policy provides that employees can make a complaint to human resources directly or through a supervisor, yet Miller waited to file his formal complaint until approximately three years after the alleged harassing behavior began. During those three years, Miller voiced his objections, such as they were, only to Kendall. His responses to Kendall's alleged comments ranged from disregard to deflection to mild chastisement to questioning.[3] Even assuming Miller had informally complained to Kendall, those informal complaints to his supervisor—*and alleged harasser*—are not enough for Miller to show (as he must to defeat the affirmative defense) that he took advantage of the New York State Police's preventive or corrective opportunities. "In some instances, it may be unreasonable for a victim of harassment to complain only to the harasser because, as a realistic and practical matter, there are other channels that are adequately indicated and are accessible and open." *Gorzynski*, 593 F.3d at 105. Here, the New York State Police's other avenues were known and accessible to Miller during the three-year period. Once Miller did finally utilize the internal

---

[3] For example, in various alleged incidents Miller responded by shaking his head and walking away, telling Kendall a video Kendall showed him was not funny, saying "Not cool" about a Facebook post by Kendall, J. App'x at 372, or asking Kendall "why do they have to be animals?" when Kendall referred to certain African American victims of a crime as animals, J. App'x at 388. When Miller unequivocally complained to Kendall, it was about non-New York State Police members over whom Kendall had no authority (and to whom the New York State Police complaint procedure presumably did not apply); nevertheless, in those instances Kendall told Miller how he could file a complaint externally.

complaint procedure, his complaint was effectively investigated, and no retaliation has been shown.

Accordingly, summary judgment was also properly granted in favor of the New York State Police based on the *Faragher*/*Ellerth* defense.

## III. Disability Claims

"To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (alterations incorporated and citations and internal quotation marks omitted). In addition, the Family Medical Leave Act entitles eligible employees to twelve weeks per year of unpaid leave on account of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

After Miller submitted a doctor's letter stating that he was unable to work for a period of two weeks, the New York State Police and Christensen placed Miller on involuntary, indefinite leave rather than light duty. Miller argues that, in doing so, his employer denied his requested accommodation and failed to engage in the "interactive process" envisioned by the ADA.

While "generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed," *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d

9

Cir. 2006) (citation and internal quotation marks omitted), "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," *Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000). "Nevertheless, an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal." *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).

Here, Miller failed to show that a light duty position was available or that, given the nature of his disability, light duty would be a reasonable accommodation enabling him to perform the essential functions of his job. Nor did Miller request light duty. Rather, by submitting a doctor's letter stating he was unable to work for a period of two weeks, Miller requested leave. His employer placed him on leave, albeit for a longer period than Miller desired, pursuant to New York State Police policy. In light of these facts, Miller cannot make out a *prima facie* case for failure to accommodate under the ADA or the Rehabilitation Act. Nor is the Family Medical Leave Act implicated simply by the fact that the New York State Police placed Miller on leave for longer than requested. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174–75 (2d Cir. 2006) (holding that involuntary leave by itself does not violate any right provided by the Family Medical Leave Act).

Accordingly, the district court properly granted summary judgment in favor of Defendants-Appellees on Miller's disability-related claims.

* * *

10

We have considered Miller's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court