**Victor CRUZ, Plaintiff,**

v.

**Louis LIBERATORE, individually and in his official capacity, Thomas Belfiore, individually and in his official capacity, Westchester County Police Department, and The County of Westchester, Defendants.**

**No. 04 Civ. 9808(SCR).**

United States District Court, S.D. New York.

Oct. 14, 2008.

512

Julie Ero Gaughran, Julie Gaughran, Esq., Mount Kisco, NY, for Plaintiff.

Rocco Conte, II, O'Connor O'Connor, Bresee, and First, PC, Albany, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

STEPHEN C. ROBINSON, District Judge.

Plaintiff, Victor Cruz, filed this action against Louis Liberatore, individually and in his official capacity as Deputy Chief Inspector of the Westchester County Police Department (the "WCPD"), Thomas Belfiore, individually and in his official capacity as Commissioner of the WCDP, the WCPD, and the County of Westchester (the "County")(collectively, the *"defendants"*). Officer Cruz has asserted a plethora of claims against the defendants. Specifically, the complaint alleges that (1) Inspector Liberatore created a hostile work environment and violated Officer Cruz's Equal Protection and Substantive Due Process rights; (2) Commissioner

Belfiore, the WCPD, and the County failed properly to train and supervise their officers with deliberate indifference to Officer Cruz's constitutional and federal rights; (3) the WCPD and the County violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.; (4) all of the defendants violated New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq.; (5) Inspector Liberatore is liable for the tort of intentional infliction of emotional distress; (6) Inspector Liberatore is liable for the torts of assault and battery and (7) all of the defendants are liable for negligence. Following the close of discovery, the defendants filed a motion for summary judgment as to all of Officer Cruz's claims.

For the reasons set forth in this opinion, the Court grants in part and denies in part the defendants' motion for summary judgment.

# I

# BACKGROUND

## A. Facts

Officer Cruz, who claims that he is Hispanic, served as a WCPD police officer for twenty years until his retirement in 2005. In August 2003, Inspector Liberatore stopped Officer Cruz in the hallway at the WCPD headquarters and demanded to know the Officer's national origin. Officer Cruz responded that he was Puerto Rican. Inspector Liberatore allegedly responded that Officer Cruz was "too white and too tall" to be Puerto Rican; he also allegedly observed that Officer Cruz was "the biggest Puerto Rican" that he had ever seen and remarked that he was too heavy for the Puerto Rican "climate." PL Mem. of Law in Opp'n at 2.

On August 11, 2003, Inspector Liberatore, who is superior in rank to Officer Cruz, made the Officer salute, stand at attention, and stare straight ahead for about one minute because he believed that Officer Cruz had given him an improper salute. Officer Cruz claims that he had been walking with Chris Kelly, a white detective, and that Inspector Liberatore did not make Kelly salute him. Officer Cruz contends that the WCPD written policy directives do not require junior officers to salute senior officers in the hallway or when the senior officer is out of uniform, as he contends Inspector Liberatore was on August 11. The defendants contend that Inspector Liberatore merely instructed Officer Cruz on how to execute a proper salute and that Kelly was not required to salute the Inspector because Kelly was not in uniform.

Several months later, on December 11, 2003, Officer Cruz used a Sheriffs car, with permission, to deliver documents to another building. Once he returned to WCPD headquarters, he claims that Inspector Liberatore "accosted him" and demanded to know why Officer Cruz had used a police car and why he had not turned on the car's headlights while the car's wipers were on, a violation of New York State law. Officer Cruz claims that, as Inspector Liberatore was speaking to him, the Inspector threateningly tapped five times on Officer Cruz's chest with a closed fist. Officer Cruz asserts that he apologized to the explained that he had turned on the headlights shortly after leaving headquarters. At this point, Officer Cruz alleges, Inspector Liberatore slapped him hard across his face.

Thereafter, Officer Cruz went to the office of Sergeant Leonard Spano, who was the president of the Police Benevolent Association, and informed him of what had transpired. While Officer Cruz was in Spano's office, Inspector Liberatore entered the office for an unrelated reason. Spano told the Inspector that Officer Cruz had complained to him and was offended

by the Inspector's actions. Officer Cruz claims that Inspector Liberatore stated, "Fine. It won't happen again." PL Rule 56.1 Statement ¶ 27.

Subsequently, Officer Cruz claims that he went to Special Affairs to file charges against Inspector Liberatore of discourteous behavior and conduct unbecoming an officer. During this time, Officer Cruz also reported Inspector Liberatore's conduct during the "saluting incident." Officer Cruz did not claim that he had been discriminated against or that he faced a hostile work environment; in a subsequent deposition taken in connection with this case, Officer Cruz claims that he was afraid that the WCPD would retaliate against him if he made such allegations. The parties agree that Inspector Liberatore, in forty years of services, has never been accused of any sort of discriminatory conduct. After an investigation, the Special Investigations Unit ("SIU") substantiated the charge of discourteous conduct, but dismissed the charge of conduct unbecoming an officer. A letter of counseling was placed in Inspector Liberatore's file.[1]

During the SIU investigation, Officer Cruz indicated that he was still very upset about what had happened and indicated that he was concerned about how he would react if he came across Inspector Liberatore at WCPD headquarters. The WCPD removed Officer Cruz's weapons, although they were shortly returned to him. In addition, Officer Cruz consented to being transferred from headquarters to the Yonkers Social Services office (the "Yonkers Office"), where he had worked earlier in his career. The Officer's rank and pay did not change, and Officer Cruz indicated that he enjoyed working at the Yonkers Office.

The parties do not dispute that, in June or July 2004, while Officer Cruz was working in the Yonkers Office, a former girlfriend of his, who also worked there, complained about Officer Cruz's behavior. Specifically, the complainant stated that Officer Cruz had been bothering other women at the office by focusing the security camera on female employees and using his office to meet and pick up women. After this complaint, the SIU conducted an investigation but concluded that there was no reason to interview Officer Cruz. Captain John Hodges, Officer Cruz's superior, received a letter from an employee on Officer Cruz's behalf requesting that he be allowed to stay at the Yonker's Office.

After the investigation, Officer Cruz was transferred from the Yonkers Office to the Westchester County Airport (the "Airport"). Officer Cruz claims that, after he received notice of the transfer, Hodges told him: "Victor, I just want you to know that I didn't transfer you. It came from upstairs. It came from SIU. I have nothing to do with it. There's nothing I could do. You're a good guy." Aff. Conte, Exh. G at 157. The defendants, however, contend that Hodges himself transferred Officer Cruz, and they submit an affidavit in which Hodges avers: "It was apparent me [sic] at that point that there was some controversy involving Victor Cruz at the Yonkers Social Services office, as indicated by the aforementioned letters. As a result, I decided to transfer Cruz to the

---

1. Inspector Liberatore resigned in February 2004, two months short of his forty year anniversary with the WCPD. The defendants contend that, upon assuming his position, Commissioner Thomas Belfiore determined that Inspector Liberatore did not fit within the Commissioner's plans to reorganize the WCPD and therefore asked the Inspector to submit his resignation. The defendants contend that this request predated Inspector Liberatore's December 11 slapping of Officer Cruz and that the request bears no connection to that incident. Officer Cruz contends that the two incidents are related, but he concedes that he has no evidence to support his position.

airport in an effort to alleviate any rising tension." *Id.*, Exh. Q at 2.

Officer Cruz claims that he was unhappy with his transfer from the Yonkers Office to the Airport because the transfer forced him to work around the clock and on weekends, and thus did not allow him to visit his son on the weekends. The defendants note that Officer Cruz's transfer to the Airport did not affect his rank, pay, or benefits.

**B. Procedural Posture**

Officer Cruz filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 15, 2004. In that complaint, Officer Cruz asserted that he had been discriminated against on the basis of his race, color, and national origin. The basis for these allegations was Inspector Liberatore's alleged statements that Officer Cruz was "too white and too tall" to be Puerto Rican, the "biggest Puerto Rican" he had ever seen, and was too heavy for his climate. *Id.*, Exh. C at 2.

On September 20, 2004, the EEOC issued a right to sue letter, and Officer Cruz filed a Inspector Liberatore created a hostile work environment and violated Officer Cruz's Equal Protection and Substantive Due Process rights; (2) Commissioner Belfiore, the WCPD, and the County failed properly to train and supervise their officers with deliberate indifference to Officer Cruz's constitutional and federal rights; (3) the WCPD and the County violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.; (4) all of the defendants violated the NYHRL, N.Y. Exec. Law § 290 et seq.; (5) Inspector Liberatore is liable for the tort of intentional infliction of emotional distress; (6) Inspector Liberatore is liable for the tort of assault and battery; and (7) all of the defendants are liable for negligence. Following the close of discovery, the defendants filed a motion for summary judgment as to all of Officer Cruz's claims.

The defendants have filed a motion for summary judgment, and the motion is fully briefed and ready for a decision.

## II

### DISCUSSION

**A. Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Summary judgment is inappropriate unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir.2005) (citing Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986)). In conducting this inquiry, all-facts and reasonable inferences must be construed in favor of the non-moving party, here, Officer Cruz. *Magin*, 420 F.3d at 686. This Court does not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, the Court determines whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To overcome a motion for summary judgment, the non-moving party must come forward with spe-

cific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. Rather, the non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff. *Id.*

## B. Claims Under 42 U.S.C. § 1983

### 1. Equal Protection Hostile Work Environment Claim—Inspector Liberatore

The first cause of action in Officer Cruz's complaint invokes 42 U.S.C. § 1983 and asserts that Inspector Liberatore, who is named in his individual and official capacity, violated Officer Cruz's federal rights by creating a hostile working environment. Specifically, The complaint alleges that Inspector Liberatore insulted Officer Cruz about his ethnicity, selectively enforced work rules, repeatedly humiliated Officer Cruz, and physically assaulted him.

The defendants raise numerous arguments in support of their motion for summary judgment on Mr. Cruz's hostile work environment claim. First, the defendants claim that Officer Cruz is not a member of a protected class. Seconds the incidents about which Officer Cruz complains neither were sufficiently pervasive nor severe to establish a prima facie case of hostile work environment. Third, Officer Cruz has failed to proffer evidence showing that he subjectively perceived his workplace as abusive and, similarly, failed to adduce evidence showing that a reasonable person would have perceived it as such. After setting forth the relevant legal background, the Court shall address each of the defendants' arguments in turn.

### a. Individual Capacity

 To assert a claim under 42 U.S.C. § 1983, a plaintiff must establish that an individual acting under color of state law violated some right secured by the Constitution or the laws of the United States. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006); *see also* 42 U.S.C. § 1983. In this case, Officer Cruz has alleged that Inspector Liberatore, acting under color of state law, discriminated against him by creating a hostile work environment, in violation of the Equal Protection Clause. Hostile work environment claims—unlike Title VII claims, *see Feingold v. New York*, 366 F.3d 138, 159 (2d Cir.2004)—are cognizable against individuals under section 1983. *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir.2004). Indeed, a hostile work environment claim brought under section 1983 is analyzed using "Title VII law." *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir.1996).

 To establish a prima facie case of a hostile work environment discrimination and defeat a motion for summary judgment, "a plaintiff must produce evidence that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotation marks omitted). The determination of whether the conduct alleged was so severe *or* pervasive to alter the condition of employment, the Supreme Court has held, must be made based on "the totality of the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Factors bearing on this inquiry, the Justice have explained, include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's performance." *Id.* at 23, 114 S.Ct. 367.

▇▇▇ It is insufficient, moreover, for a plaintiff merely to establish that he believed that the alleged conduct was hostile or abusive; the plaintiff also must adduce evidence from which a reasonable jury could find that the work environment was objectively hostile or abusive. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007). Finally, a court may not decide as a matter of law a hostile work environment claim if "reasonable jurors could disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee." *Patterson*, 375 F.3d at 226.

With these governing principles in mind, the Court turns to the defendants' arguments.

#### i.

The defendants' first argument is an atypical one—they allege that Officer Cruz is not a member of a protected class and therefore cannot establish that any of the incidents about which he complains were based on racial or ethnic discrimination. The defendants based their argument on the representations that Officer Cruz himself made in connection with separate lawsuit. In that suit, Officer Cruz submitted to the Supreme Court of the State of New York a *sworn affidavit* stating: "*My ethnicity is Caucasian, my skin is Caucasian* and features are Caucasian, and there is no possibility of my being mistaken for African/American or African/Hispanic"; "[n]o reasonable juror could find that I am African/Hispanic." Rocca Aff. Exh. K at ¶¶ 7, 9 (emphasis supplied).

Officer Cruz concedes that he submitted the sworn affidavit making these statements. He claims, however, that the affidavit was submitted to defend an excessive force lawsuit in which the plaintiff had

alleged that he had been arrested by an "African American or African Hispanic police officer." Pl. Mem. in Opp'n at 6. Officer Cruz submits that he was born in Puerto Rico and is "indisputably an Hispanic man." *Id.* at 7. He believes that the defendants' argument in this case "is a specious, semantic argument that does not deserve the Court's attention." *Id.* at 7.

Given that Officer Cruz has submitted a sworn affidavit in this case claiming that he was born in Puerto Rico, *see* Cruz Aff. ¶ 20-25, and that he does have an Hispanic surname, the Court does not believe that it would be appropriate to grant the defendants' summary judgment on this issue. Of course, the defendants' might well be entitled to offer into evidence Officer Cruz's previous statements made under oath. *See* Fed.R.Evid. 801(d)(2)(A). The Court reminds Officer Cruz of his obligation to testify truthfully, accurately, and without hyperbole when he is under oath or submitting documents to a court. In addition, Officer Cruz's counsel shall inform this Court whether the litigation before the Supreme Court of New York is still pending.

The defendants' motion for summary judgment on this basis is denied.

#### ii.

The defendants contend that Officer Cruz has not adduced sufficient evidence from which a reasonable jury could find that Inspector Liberatore created a racially hostile work environment. They contend that the incidents about which Officer Cruz complains—Inspector Liberatore telling him, among other things that he was, "to tall and too White to be a Puerto Rican," making him stand at attention for a full minute while staring straight ahead and in the presence of another officer, and slapping him in the face after an alleged minor traffic infraction, over the course of several months—are not so severe or per-

**518**

vasive to support a hostile work environment claim.

■■■ In a hostile work environment claim, a court must be guided by the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Isolated incidents, as a general matter, "will not rise to the level of a hostile work environment." *Patterson,* 375 F.3d at 227. Nevertheless, the Second Circuit has emphasized repeatedly that "even a single incident of sufficient severity may so alter the terms and condition of employment as to create such an environment." *Id; Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000) ("To withstand summary judgment, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.") (internal quotation marks and citation omitted); *Howley v. Town of Stratford,* 217 F.3d 141, 153–54 (2d Cir. 2000); *Richardson v. N.Y. State Dep't of Corr. Srv.,* 180 F.3d 426, 437 (2d Cir.1999), *abrogated on other grounds by, Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The question in such cases is whether reasonable minds *could* disagree that the incident in question was "extraordinarily severe." *Howley,* 217 F.3d at 153–54. Thus, judgment as a matter of law is inappropriate in cases where "reasonable jurors could disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee." *Patterson,* 375 F.3d at 226.

■■■ Although this is a very close case, the Court believes that reasonable jurors could disagree about the conduct about which Officer Cruz complains. Officer Cruz contends that Inspector Liberatore has harassed him publicly at the WCPD headquarters—demanding to know Officer Cruz's national origin and then dismissing Officer Cruz's answer on the ground that the Officer was "too white and too tall" to be Puerto Rican. Pl. Mem. of Law in Opp'n at 2. Inspector Liberatore also allegedly observed that Officer Cruz was "the biggest Puerto Rican" he had ever seen and remarked that he was too heavy for the Puerto Rican "climate." *Id.* Shortly thereafter, Officer Cruz claims that Inspector Liberatore singled him out while Officer Cruz was with a Caucasian police officer, and forced him to render a salute, stand at attention, and stare straight ahead for almost a full minute; the Caucasian officer, however, was not forced to salute or stand at attention. Several months later, Inspector Liberatore used his fist to bump Officer Cruz's chest and then allegedly slapped Officer Cruz, his subordinate officer, across the face, supposedly minor traffic infraction.[2]

**2.** The defendants raise numerous factual arguments that are inappropriate at the summary judgment stage. For example, the defendants contend that Officer Cruz was required to salute Inspector Liberatore while the white Officer with which Officer Cruz was walking was not because that Officer was in plain clothes. The defendants also submit that Inspector Liberatore did not slap Officer Cruz's face, but merely tapped him lightly on the face, in a paternal fashion. A jury might well accept Inspector Liberatore's version of the facts after a trial, but, at the summary judgment stage, this Court is required to take the facts in the light most favorable to Officer Cruz. *Magin v. Monsanto Co.,* 420 F.3d 679, 686 (7th Cir.2005).

Inspector Liberatore's conduct, although not frequent or pervasive, was "severe," "physically threatening," and "humiliating." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. The first two incidents about which Officer Cruz complains support an inference that Inspector Liberatore's animosity toward Officer Cruz was motivated by the Officer's Puerto Rican nationality and ethnicity. In addition, the Inspectors' actions over the course of several months increased in severity, culminating in the alleged physical assault of Officer Cruz. A single incident in which the conduct alleged crosses the line from mere insults to actual physical force—indeed, a battery under the law of tort, *see Dougherty v. Weinert*, 10 Misc.3d 62, 809 N.Y.S.2d 758, 759 (N.Y.Supp.2005), and a misdemeanor assault under New York criminal law, *see* N.Y. PENAL LAW § 120.00(1) (2004)—is more likely to support a hostile work environment claim. *See, e.g., Patterson*, 375 F.3d at 230 ("Although a single incident ordinarily will not give rise to a cognizable claim for hostile work environment, this alleged event included not only racial remarks but also a physical assault...."); *Ezeocha v. Indus. Threaded Products Corp.*, No. 04 Civ. 1064, 2006 WL 2792752, at *7–8 (E.D.N.Y. Sept. 27, 2006) (physical altercation); *cf. EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 318 (4th Cir.2008) ("[T]he presence of physical *threats* undeniable strengthens a hostile work environment claim." (internal quotation marks and citation omitted)); *Jasmin v. N.Y. State Dep't of Labor*, 1999 WL 1225249, at *3 (S.D.N.Y. Dec.21, 1999) (*threat* of physical violence). Indeed, Inspector Liberatore's alleged conduct is susceptible to being characterized by reasonable minds as both abusive and hostile—the eponym of the claim that Officer Cruz seeks to establish.

Inspector Liberatore's alleged physical assault, moreover, occurred within the context of a paramilitary organization where trust between superiors and their subordinates, as well as an officer's reputation amongst fellow officers, is of the utmost importance. *See, e.g., Howley*, 217 F.3d at 154 ("In an occupation whose success in preserving life and property often depends on firefighters' unquestioning execution of line-of-command orders in emergency situations, the fomenting of gender-based skepticism as to the competence of a commanding officer may easily have the effect, among others, of diminishing the respect accorded the officer by subordinates and thereby impairing her ability to lead in the life-threatening circumstances often faced by firefighters."); *Dawson v. County of Westchester*, 373 F.3d 265, 273–74 (2d Cir.2004) (noting, in a hostile work environment claim brought by correctional officers, that the critical question is "whether the workplace atmosphere, considered as a whole, undermined plaintiffs' ability to perform their jobs"). Under these circumstances, thus, the Court is unable to conclude, as a matter of law, that no reasonable juror could find that Inspector Liberatore's conduct "adversely altered the working conditions" of Officer Cruz. *Patterson*, 375 F.3d at 226.

It bears emphasis that, at this stage of the litigation, the Court must take the facts in the light most favorable to Officer Cruz and must resolve all evidentiary conflicts in his favor. Although a factfinder ultimately may credit Inspector Liberatore's version of the events or may determine that the Inspector's conduct was not sufficiently severe to establish a hostile work environment claim, this issue cannot not be resolve as a matter of law.

### iii.

The defendants' final argument regarding Officer Cruz's hostile work environment claim against Inspector Liberatore is that the Officer has not proffered sufficient evidence from which a reasonable jury could find that he subjectively

perceived the workplace as hostile and abuse.

A reasonable jury could conclude from Officer Cruz's testimony that he perceived his workplace as hostile and abusive and that it altered the conditions of his work. *See Patane,* 508 F.3d at 113. Officer Cruz offered the following testimony as his deposition:

Q. Did you feel that this was more stressful than the episode you told me about earlier where you ... had to deal with people who had guns, and people in the projects who were threatening you, physically? ....

A. It's a different type of stress.... I deal with a lot of stress; but when this situation occurred here, it's more of a humiliation and embarrassment of a man putting his hands on somebody. That is the most humiliating thing a man could do to another man. It's a different type of stress; because if he would have did that to me—I mean, if I would have did that to him, I would have been immediately suspended, possibly fired if I would have did that to him.

. . . .

but when a man does that to you, that's a different type of stress, he's more hitting your dignity as a man. And that was humiliating and embarrassing. It was degrading for him to do that. I would have expected that from somebody I'm arresting, but not from an inspector.

Rocco Aff. Exh. G at 162, 164. Officer Cruz also testified that, based in part on Inspector Liberatore's alleged physical assault, he was "suffering from insomnia," he "was getting agitated a lot," and he had to deal with officers asking him "how can you let this man do this to you and get away with it". *Id.* at 161–62. Were a jury to credit Officer Cruz's testimony, it reasonably could find that the Officer subjective-

ly believed that his workplace had become hostile and abusive and that the Inspector's conduct had "adversely altered the working conditions of a reasonable employee." *Patterson,* 375 F.3d at 226. Accordingly, the Court denies the defendants' motion for summary judgment on this ground.

**b. Official Capacity**

 With respect to the claims against Inspector Liberatore in his official capacity, the Court must treat the claim as one against the municipality itself. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.... It is *not* a suit against the official personally, for fee real party in interest in the entity." (internal quotation marks and citation omitted) (emphasis in original)). A municipal entity generally cannot be held liable under section 1983 unless the alleged constitutional violation resulted from the entity's "policy or custom." *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As the Second Circuit has explained, however, the "policy or custom" requirement is "intended simply to distinguish acts of the municipality from acts of its employees, in order that municipal liability be limited to conduct for which the municipality is actually responsible." *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 142 (2d Cir.1999). This requirement, in other words, prevents a municipality for being liable on a *respondeat superior* theory. Thus, where the challenged action is directed by an official with "final policymaking authority"—that is, an official whose decision "may fairly be said to represent official policy"—the municipality may be held liable notwithstanding the absence of a broader policy.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a *single decision by its properly constituted legislative body*— whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." (emphasis supplied)); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir.2003). Whether an official or a group of officials has policymaking authority, the Supreme Court has explained, is a question of state law. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737–38, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion).

Officer Cruz submits that Inspector Liberatore's conduct may be imputed to the WCPD and the County because the Inspector is a "policymaker." Pl. Mem. in Opp'n at 8. He contends that Inspector Liberatore was "in charge of the facility and the fleet" and that he was third in command at the WCPD. *Id.*

█ The plaintiff bears the burden of establishing that a claimed official is the "final policymaker"—not merely *a* "policymaker"—with respect to the relevant conduct. *Kempkes v. Downey*, No. 07 Civ. 1298, 2008 WL 852765, at *9 (S.D.N.Y. Mar. 31, 2008) (citing *Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir.2000)). At the time of his alleged conduct, Liberatore held the position of *Deputy* Chief Inspector of the WCPD. Although he might have been in charge of the police "facility" and the "fleet," the relevant question, given that Officer Cruz's complaint is based on discrimination, is whether Inspector Liberatore was the final policymaker with respect to personnel matters. Officer Cruz

has failed to put forth any documentary evidence or testimony suggesting that Inspector Liberatore was the WCPD's final policymaker for personnel matters. Consequently, the Court grants the defendants' motion for summary judgment as to Officer Cruz's section 1983 claim against Inspector Liberatore in his official capacity.

### 2. Failure to Train and Supervise— Commissioner Belfiore, WCPD, and the County

In his second cause of action, Officer Cruz alleges that Commissioner Belfiore, the WCPD, and the County are liable for having failed properly to train and supervise their officers regarding discrimination in a manner evincing deliberate indifference to federal rights. Compl. ¶ 78–79; *see City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (holding that a city's failure to train its subordinates satisfies *Monell's* policy or custom requirement where the need to act is so obvious and the inadequacy of current practices is very likely to result in a deprivation of federal rights that the municipality can be said to have been deliberately indifferent to the need); *Patterson*, 375 F.3d at 227–29 (discussing a failure to train and supervise claim in the context of section 1983). The defendants submit that summary judgment is appropriate on this claim because Officer Cruz has adduced no evidence suggesting that the WCPD or the County has shown deliberate indifference in failing to train and supervise its police employees with respect to discrimination.

In their motion for summary judgment, the defendants have pointed to General Order Nos. 18.09A and 18.10, which indicate that the WCP maintains a "zero tolerance" policy against "discrimination involving race, color, ... and national origin." Rocco Aff. Exh. S at 1. These General

Orders also establish fairly comprehensive procedures and guidance regarding workplace behavior, discrimination, and the proper handling of discrimination claims at the supervisory level.

██ Officer Cruz has not established that there are genuine issues of material fact regarding whether the defendants are liable for having failed, in a manner evincing deliberate indifference, properly to train and supervise their officers regarding discrimination. Under well-established standards governing motions for summary judgment, once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, the non-moving party, must come forward with *specific facts* demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading", FED.R.CIV.P. 56(e); "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment," *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 155 (2d Cir.2006) (internal quotation marks and citation omitted). Officer Cruz has not responded either to the defendants' arguments or to these General Orders. He concedes that, prior to the incidents alleged in this case, Inspector Liberatore never has been accused of discrimination in his nearly forty years of service with the WCPD, *see* Def. Rule 56.1 Statement ¶ 10;

Pl. Rule 56.1 Statement ¶ 10, and he has failed to put forth evidence of discriminatory conduct by other WCPD officers or supervisors. Indeed, he has failed to address the failure to train and supervise claim at all.[3] Accordingly, the Court grants the defendants' motion summary judgment with respect to Officer Cruz's failure to train and supervise claim.

## C. Retaliation Under Title VII and 42 U.S.C § 1983

Officer Cruz alleges that the defendants retaliated against him after he filed a complaint with the EEOC by transferring his duty station from the Yonkers Office to the Westchester County Airport.

The defendants contend that summary judgment is warranted with respect to this claim because (1) he failed to exhaust his administrative remedies; (2) the transfer does not constitute an adverse employment action; (3) Officer Cruz has not established a causal connection between his filing of the EEOC complaint and his transfer.

### 1. Exhaustion of Administrative Remedies

██ The defendants' first contention—failure to exhaust—does not require extensive discussion. Officer Cruz filed his complaint with the EEOC on June 14, 2004. His transfer to the Airport—the adverse employment action that he claims he suffered—occurred at some point in September 2004. It is well settled that a

---

**3.** To the extent that Officer Cruz seeks to impute directly Inspector Liberatore's conduct to the WCDP—on the ground that he is a policymaker—for purposes of the 42 U.S.C. § 1983 hostile work environment claim, *see* Pl. Mem. in Opp'n at 8, his effort is unavailing. As a preliminary matter, a failure to train or supervise claim, which is what Officer Cruz has alleged in his complaint, *see* Compl. ¶ 78–79, relies on more than merely the imputation of a subordinate individual's conduct. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In any event, Deputy Chief Inspector Liberatore, as his title would imply, is not a *final* policymaking official for the WCPD for purposes section 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also* Section II.B.1.b.

federal district court has jurisdiction over Title VII claims that either are included in an EEOC charge or "are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.2002). Subsequent conduct is reasonably related to conduct alleged in an EEOC charge, the Second Circuit has explained, if "it alleges retaliation for filing the EEOC charge." *Id.* In this case, Officer Cruz's retaliation claim is based on conduct subsequent to his June 14, 2004, EEOC complaint. Therefore, the claim is based on conduct reasonably related to that EEOC charge and this Court has jurisdiction to entertain the claim.

### 2. Adverse Employment Action

The adverse employment action upon which Officer Cruz has predicated his claims of retaliation is his transfer from the Yonkers Office to the Airport. At the Yonkers Office, Officer Cruz had weekends off and was able to maintain regular business hours, *i.e.*, 9 a.m. to 5 p.m., and this arrangements allowed Officer Cruz, a divorced father, to visit regularly with his son. After he was transferred to the Airport, however, he was forced to work weekends and work shifts "around the clock." Rocco Aff. Exh. G at 189. The defendants note that Officer Cruz maintained the same rate of pay, same benefits, and the same responsibilities after his transfer to the Airport, and therefore they claim that he has not suffered an adverse employment action.

Were Officer Cruz's retaliation claim predicated solely on his change of schedule, he would face a difficult, if not Sisyphean, task. *See, e.g., Constance v. Pepsi Bottling Co.*, No. 03 Civ. 5009, 2007 WL 2460688, at * 19 (E.D.N.Y. Aug. 24, 2007) ("[P]laintiff's complaints that he was required to travel and had irregular shifts, requiring him to work at night and on occasional weekends amounts to 'mere in-conveniences' rather than adverse actions."); *Antonmarchi v. Consolidated Edison Co.*, No. 03 Civ. 7735, 2008 WL 4444609, at *14 (S.D.N.Y. Sept.29, 2008); *Turner v. Davidson/Gilmour Pipe Supply*, No. 04 Civ. 3278, 2006 WL 1652613, at *8 (E.D.N.Y. June 14, 2006); *Johnson v. Eastchester Union Free Sch. Dist.*, 211 F.Supp.2d 514, 518 (S.D.N.Y.2002) ("Johnson identifies his new hours and job location to be very inconvenient for him. Inconvenience by itself, however, does not constitute an adverse job action." (internal quotation marks and citation omitted)). *But see Little v. Nat'l Broadcasting Co.*, 210 F.Supp.2d 330, 377 (2d Cir.2002) (noting that "a shift assignment that make a normal life difficult for the employee" may constitute an adverse employment action) (citing *Gibson v. Am. Broadcasting Co.*, 892 F.2d 1128, 1134 (2d Cir. 1989)). Recently, however, the analysis for determining which employment actions are materially adverse has undergone some important changes.

In *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court specifically rejected the notion that the anti-retaliation provision of Title VII only covers "discriminatory actions that affect the terms and conditions of employment." Given the anti-retaliation provision's proper breadth, the Court held that adverse employment actions are those actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57, 126 S.Ct. 2405. Nevertheless, the Court cautioned that

reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable

person in the plaintiffs position, considering all the circumstances. *Id.* at 71, 126 S.Ct. 2405. For example, the Supreme Court noted, a "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother *with school age children.*" *Id.* at 69, 126 S.Ct. 2405 (emphasis added).

 In this case, Officer Cruz claims that his transfer affected his ability to visit and spend time with his son, especially during the weekends. From the perspective of a reasonable worker, a transfer that affects a parent's ability to spend time with and care for a child is the type of employment action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57, 126 S.Ct. 2405. Accordingly, the defendants' motion for summary judgment on this basis is denied.

### 3. Causal Connection Between the Transfer and the Filing of the EEOC Complaint

 To establish a claim of retaliation under Title VII or 42 U.S.C. § 1983, Officer Cruz "must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging [Officer Cruz]; (3) a causal connection between the protected activity and the adverse employment act." *Richardson v. Comm'n on Human Rights & Opportunities,* 532 F.3d 114, 123 (2d Cir.2008) (internal quotation marks and citations omitted); *see also* 42 U.S.C. § 2000e–3(a); *Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 (2d Cir.1990) (noting, with respect to the third element, that the plaintiff need not establish that retaliation was the *sole* motive for the adverse employment action). If the plaintiff establishes a prima facie ease of retaliation, then the burden shifts to the employer put forth evidence "of a legitimate, nonretaliatory reason for the

challenged employment decision." *Cifra v. G.E. Co.,* 252 F.3d 205, 216 (2d Cir.2001). If the employer does assert a legitimate, nonretaliatory reason for the employment action, then the plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.* A plaintiff is not required to show that "the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995) (internal quotation marks and citation omitted). Of course, evidence suggesting that the employer's explanation is false may be quite probative on the issue of pretext. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Nevertheless, the Supreme Court has explained that "certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148, 120 S.Ct. 2097.

In this case, the defendants contend that they have put forth a legitimate, nonretaliatory reason for Officer Cruz's transfer— namely, the tension or controversy surrounding Officer Cruz's behavior at the Yonkers Office. In opposition, Office Cruz contends that the defendants' purported reason merely is a pretext for impermissible retaliation. Specifically, Officer Cruz argues: "The record indicates that within three months of filing an EEOC charge, Officer Cruz was transferred.... He was told by Captain Hodges that the decision to do so came from 'upstairs' [Captain] Hodges testified that he himself made the decision-based upon the controversy swirl-

ing around Officer Cruz, and that he was not informed of the result of an investigation of Office Cruz before making his decision." Pl. Mem. in Opp'n at 11. Officer Cruz points to a letter, dated August 10, 2004, written by an officer of the SIU that determines that Officer Cruz was not guilty of any misconduct and that states that Captain Hodges was informed of Officer Cruz's exoneration.

Officer Cruz has established that there are a number of material inconsistencies in Captain Hodge's testimony. Captain Hodges, in a sworn affidavit submitted in connection with this case, avers that, in June or July 2004, a woman employed at the Yonkers Office complained about Officer Cruz's conduct. After receiving this complaint, Captain Hodges explains that he also received "at least one letter from an employee [at the Yonkers Office] indicating that Cruz was a good employee and stating that Cruz should remain at the Yonkers [O]ffice." Rocco Aff. Exh. Q ¶ 5. The affidavit then states; "It was apparent me [sic] at that point that there, was some controversy involving Victor Cruz at the Yonkers [Office].... As a result, I decided to transfer Cruz to the airport in an effort to alleviate any rising tension." *Id.* ¶¶ 2, 6. The transfer occurred in September of 2004. At a deposition taken in connection with this case, Captain Hodges was asked whether he had received the results of the investigation prior to making the decision to transfer Officer Cruz. Captain Hodges answered, "No, I had not. And I do not believe that it would have been completed that quickly." Gaughran Aff. Exh. B at 17.

There is documentary evidence, however, that conflicts with Captain Hodges' affidavit and testimony. On August 10, 2004, an SIU officer, who had been investigating the complaint against Officer Cruz, authored a letter to the "file" explaining that "[a]t this time there does not appear to be any evidence of misconduct on the part of Cruz." *Id.* Exh. C at 1. The letter further explains that Captain Hodges had been informed of the situation on August 6, 2004, nearly a month before the Captain claims that he decided to transfer Officer Cruz. *Id.* In addition, Officer Cruz claims that, after he had been informed about his transfer to the Airport, Captain Hodges told him: "Victor, I just want you to know that I didn't transfer you. It came from upstairs. It came from SIU. I have nothing to do with it. There's nothing I could do. You're a good guy."[4] Rocco Aff. Exh. G at 157.

■ This evidence raises a question about who actually made the decision to transfer Officer Cruz—"upstairs" or Captain Hodges. In addition, the evidence raises a question as to why was that decision made, given that there were letters written in support of Officer Cruz remaining at the Yonkers Office and that he had been cleared of any wrongdoing. Importantly, although Captain Hodges has testified that the transfer was due to the "controversy involving Victor Cruz at the Yonkers [Office]", *see* Rocco Aff. Exh. Q ¶ 6, the defendants have offered *no* evidence substantiating this alleged controversy (beyond the original complaint of misconduct of which Officer Cruz had been cleared). At this stage of the litigation, thus, Officer Cruz has succeeded in raising doubts about the veracity of *all* of the defendants' evidence in support of their purportedly nondiscriminatory reason for his transfer. Consequently, the Court finds that a reasonable factfinder could conclude that impermissible retaliation

---

4. Although this statement is hearsay, it would be admissible to impeach Captain Hodge's assertion that he himself had determined that Officer Cruz should be transferred. *See Santos v. Murdock,* 243 F.3d 681, 684 (2d Cir. 2001).

might have been "one of the 'motivating' factors" of Officer Cruz's transfer. *Cronin*, 46 F.3d at 203.

### D. Title VII Hostile Work Environment Claim—WCPD and the County

The defendants invoke the *Faragher/Ellerth* doctrine as an affirmative defense to vicarious liability for Inspector Liberatore's conduct toward Officer Cruz. Officer Cruz suffered no "tangible employment action" as a result of Inspector Liberatore's conduct, the defendants claim, and therefore the defendants are entitled to summary judgment because (1) the WCPD and the County exercised reasonable care to prevent and correct promptly the discriminatory behavior and (2) Officer Cruz unreasonably failed to take advantage of the "preventative or corrective opportunities" provided by the defendants "or to avoid the harm otherwise." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Specifically, the defendants contend that Officer Cruz unreasonably failed to allege that Inspector Liberatore's conduct had been motivated by any sort of discrimination; instead, he only complained about Inspector Liberatore's discourtesy and conduct unbecoming of an officer. Officer Cruz's failure to cite his belief that discrimination had been the impetus for the Inspector's conduct prevented the defendants from investigating fully Officer Cruz's complaint.

Officer Cruz does not dispute that the defendants have established the first element of the *Faragher/Ellerth* affirmative defense. Instead, he claims that, although he complained about Inspector Liberatore's actions being discourteous and unbecoming of an officer, he feared retaliation if he made any complaints to the WCPD about national origin, race, or ethnicity. Officer Cruz testified:

Q: Did you complain to him in any way after these comments about your feeling that he was being offensive with regard to your national origin?

A: When you work with the police department—

Q: I just asked you a question: Did you make any complaints to him? Did you say anything to him?

A: I am answering you.

Q: Did you say anything to him complaining about—

A: When you start complaining about it, the first thing they do is retaliate; that's the first thing they do, they retaliate.

Rocco Aff. Exh. G at 109. Although he offers no evidence or testimony to substantiate his fears, he contends that his fears ultimately proved well founded, given his allegation that his transfer to the Airport was retaliation for his EEOC complaint.

 Employers bear the burden of establishing the *Faragher/Ellerth* affirmative defense. *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir.2001). Once an employer establishes, however, that the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise," *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275, the burden shifts "to the employee to come forward with one or more reasons why the employee did not make use of the procedures." *Leopold*, 239 F.3d at 245 (noting that, In such cases, the "employer may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion").

 One legitimate reason for an employee's reluctance to report harassment is that the employee has a "credible fear" of

retaliation. *Id* A credible fear "must be based on more than the employee's subjective belief" *Id.* Thus, the Second circuit has emphasized that, to establish a credible fear, an employee must introduce "[e]vidence ... that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Id.* In *Leopold*, for example, the court explained that the employee

> did not come forward with any such evidence, but instead simply asserted her apprehension that she would be fired for speaking up, and claimed generally that a co-worker's vague and ambiguous complaint was not taken seriously. Such conclusory assertions fail as a matter of law to constitute sufficient evidence to establish that her fear was credible—that her complaint would not be taken seriously or that she would suffer some adverse employment action. We therefore hold, with Leopold's failure of production, that Baccarat has met its burden of proving the second element of the affirmative defense and that Leopold unreasonably failed to make use of the company's complaint procedure.

*Id.* (internal quotation marks and citations omitted).

 This case presents the question whether an employee who offers no objective, *ex ante* evidence to substantiate his fear of retaliation may nonetheless establish a credible fear based on *subsequent* retaliation (unconnected to the supervisor whose discriminatory conduct is at issue [5]). The Supreme Court has emphasized that the "primary objective" of Title VII is "not to provide redress but to avoid harm."

*Faragher*, 524 U.S. at 806, 118 S.Ct. 2275. Title VII makes employers vicariously liable for a supervisor's actions in creating a hostile work environment, but the *Faragher/Ellerth* defense encourages employers to adopt policies and procedures for preventing and addressing discrimination, thus encouraging employers to "avoid harm." *Id.* Given this preventative goal and given the Second Circuit's repeated emphasis that employees report discrimination unless there is a *credible* fear, the Court believes that it would be improper to allow Officer Cruz to circumvent the second prong of the *Faragher/Ellerth* defense based solely on subsequent, but yet unsubstantiated, retaliation and without any *ex ante* evidence that WCPD or the County ignored or resisted similar complaints or took adverse employment actions against employees who made such complaints. Because Officer Cruz has offered no such evidence justifying his failure to report Inspector Liberatore's discrimination, the WCPD and the County may "rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion." *Leopold*, 239 F.3d at 246. Accordingly, the Court grants the defendants' motion for summary judgment with respect to Officer Cruz's Title VII hostile work environment claim against the WCPD and the County.

### E. New York State Human Rights Law

 Officer Cruz also has asserted claims against all of the dependents under the NYHRL, N.Y. EXEC. LAW § 290 et seq. The defendants have interposed an Eleventh Amendment defense against these claims. Municipalities do not enjoy immu-

---

**5.** Retaliation by the supervisor whose harassment is at issue would constitute a "tangible employment action" under *Faragher* and thus would preclude an employer from raising the *Faragher/Ellerth* affirmative defense. *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101–02 (2d Cir.2006). Here, Inspector Liberatore left the WCPD several months before Officer Cruz filed his EEOC complaint and before his transfer, and therefore Inspector Liberatore could not have played a part in any alleged retaliation.

nity from suit under the Eleventh Amendment, *see Will v. Mich. Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989) ("States are protected by the Eleventh Amendment while municipalities are not."); *Feeney v. Port Authority Trans–Hudson Corp.,* 873 F.2d 628, 630 (2d Cir.1989), and therefore the defendants' motion for summary judgment on this basis is denied.

Discrimination claims brought under the NYHRL are identical analytically to claims brought under Title VII. *Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997) ("We have repeatedly noted that claims brought under the [NYHRL] are analytically identical to claims brought under Title VII."); *Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F.Supp.2d 477, 487 n. 3 (S.D.N.Y.1999) (same with respect to retaliation claims). Therefore, the defendants' motion for summary judgment is granted with respect to Officer Cruz's NYHRL failure to train claim but denied with respect to the NYHRL hostile work environment and retaliation claims.

**F. Abandoned Claims**

██ "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York,* 269 F.Supp.2d 68, 75 (E.D.N.Y.) (citing *Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 393 (S.D.N.Y.1998) (collecting cases)); *cf. Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 66 (2d Cir.1998) (holding that an argument not raised on appeal is deemed abandoned). In this case, the defendants have requested summary judgment with respect to Officer Cruz's allegations of intentional infliction of emotional damage, assault and battery, and negligent hiring, training, and supervising. In his opposition to the defendants' motion for summary judgment, Officer Cruz has failed to address any of the defendants' arguments regarding these claims. The Court therefore deems these claims abandoned and grants summary judgment in the defendants' favor with respect to them.

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part the defendants' motion for summary judgment.

To summarize, the defendants' motion for summary judgment is granted with respect to the following claims: (1) section 1983 hostile work environment claim against Inspector Liberatore in his official capacity; (2) federal and state claims for failure properly to train and supervise officers against Commissioner Belfiore, the WCPD, and the County; (3) Title VII hostile work environment claim against the WCPD and the Country: (4) intentional infliction of emotional distress against Inspector Liberatore; (5) assault and battery against Inspector Liberatore; (6) negligence against all of the defendants.

The Clerk of the Court is directed to close docket entry number 8.

*It is so ordered.*